## HOFF *v.* JASPER COUNTY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

Argued and submitted December 20th, 1883.—Decided January 7th, 1884.

*Municipal Bonds—Holder for Value.*

1. When a municipal corporation subscribes to the capital stock of a railroad company, and issues its bonds in payment therefor, the bonds must comply with the requisitions which the law makes necessary in respect of registration and certificate before they are issued; and innocent holders for value are charged with the duty of knowing these laws, and of inquiring whether they have been complied with.
2. A statute requiring a State auditor to register municipal bonds and to certify that all the conditions of law have been complied with in their issue calls for the exercise of no judicial functions on his part.
3. The rulings in *Anthony* v. *County of Jasper,* 101 U. S. 693, involving the same issue of bonds, adhered to. The additional facts shown in this case present no legal aspects to distinguish it from that case.

Suit to recover on coupons on bonds issued by a county in payment of subscription to stock of a railroad company by a township within the county. The facts were in all respects the same as those in *Anthony* v. *County of Jasper,* 101 U. S. 693, except that here it was expressly found that the subscription of the township which was voted had actually been made by the County Court and accepted by the railroad company before the act providing for the registration of bonds was approved, while there the acceptance of the subscription before

the approval of the act did not appear unless by implication. The vote of the township was taken on the 5th of March, 1872; the order of the County Court for the subscription entered on the 28th of March, and on the same day the subscription was actually made and accepted. The registration act was approved March 30th.

*Mr. James S. Bottsford* for plaintiff in error, argued.

*Mr. E. J. Montague* for the defendant in error, submitted on his brief.

Mr. CHIEF JUSTICE WAITE delivered the opinion of the court.
Upon the additional fact found in this case it is insisted:
1. That if the registration act was applicable to the bonds now in question, it impaired the obligation of the contract of subscription, and is therefore, so far as such application is concerned, in contravention of art. I., sec. 10, clause 1, of the Constitution of the United States; and,
2. That it was retrospective in its operation, and therefore in contravention of art. I., sec. 28, of the Constitution of Missouri, which is:

"That no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed."

It is also insisted that the 4th section of the act is in contravention of the Constitution of Missouri, because it delegates the exercise of judicial power to an executive officer of the State.
The first two objections may be considered together, and to our minds they are disposed of by the paragraph in the opinion in *Anthony* v. *County of Jasper*, which is as follows (p. 699):

"It matters not that when the bonds were voted the registration law was not in force. Before they were issued it had gone into effect. It did not change in any way the contract with the railroad company. The company was just as much entitled to its bonds when it complied with the conditions under which they were voted after the law, as it could have been before. All the legislature attempted to do was to provide what should be a

good bond when issued. There was nothing changed but the form of the execution."

That is clearly the true construction of the 4th section of the act. The contract of subscription undoubtedly gave the company the right to valid negotiable bonds executed in due form of law. The section simply provides that before any bond thereafter issued shall be deemed to have been completely executed, it must have upon it the requisite certificate of the Auditor of State. When so certified, if otherwise in proper form, it may be issued as a duly executed negotiable public security. The provision that the certificate of the auditor "shall be *prima facie* evidence only of the facts therein stated" does not of itself open the bonds to attack in the hands of a *bona fide* holder. Before this law a bond, in due form issued under a power conferred by the legislature, could not be impeached in the hands of a *bona fide* holder for fraud or irregularities in the execution of the power by those charged with that duty. The law does not interfere with this; it simply says that the certificate which the auditor is to give shall not prevent such an impeachment, that is to say, shall not operate as an estoppel. The certificate, so far from casting suspicion on the bond, gives additional credit, for it shows that an officer of the State specially charged with the duty has examined and certified officially " that all the conditions of the law have been complied with," " and also that the conditions of the contract under which they [the bonds] were ordered to be issued have also been complied with." Such a bond certainly can have no less credit in the market than it would have without the official certificate.

Neither, in our opinion, does the fact that one more officer must examine and certify the bond before it can be issued place such an additional burden on the parties to the subscription as to impair the obligation of their contract. It is in reality no more than providing that two officers shall sign a municipal bond instead of one before the body politic shall be bound by an instrument to be put on the market and sold as commercial paper. We cannot believe, if when the subscription was made, a bond, if signed by the presiding justice of the

County Court alone, would have been sufficient, it would be contended that the obligation of the contract of subscription was impaired by a law passed afterwards that required the signature of the clerk of the court to the bond as well as that of the presiding justice. In the view we take of the case, the requirement of the signature and certificate of the Auditor of State is nothing more in legal effect than that. By the contract of subscription the township agreed to take stock and pay for it in valid negotiable bonds, and the company agreed to take the bonds and give the stock. All the new law has done is to provide what shall be a valid negotiable bond of the township, and this by providing additional guaranties against fraudulent and irregular issues. Of such a provision honest parties cannot complain, for it is always to be presumed that a public officer will do whenever called on what the law requires of him.

As to the objection that the duties of the Auditor, in respect to his inquiries under the 4th section, are judicial rather than executive, it is sufficient to say that every executive officer, when called on to act in his official capacity, must inquire and determine whether, on the facts, the law requires him to do one thing or another. The due execution of these bonds was an executive act, and the Auditor of State was made by law one of the executive officers whose duty it was to take part in their execution. The inquiries he is required to make do not differ in their character from those the presiding justice of the County Court should have made when he affixed his signature. The certificate of the auditor being according to the statute *prima facie* evidence only of the facts stated, amounts to nothing more than that in his opinion the circumstances are such that the bonds may properly go out as commercial paper of the kind they appear on their face to be. It binds no one. It simply states the opinion of this executive officer on the questions he was called on to consider in his official capacity. It makes the bond complete in the form of its execution, and in law does nothing more.

We are of opinion that this case is in no respect distinguishable from *Anthony* v. *County of Jasper*, and upon that authority                                   *The judgment is affirmed.*