HON. T. L. NORVAL, CHIEF JUSTICE.
HON. J. J. SULLIVAN, } JUDGES.
HON. SILAS A. HOLCOMB, } JUDGES.

DEPARTMENT No. 1.
HON. WILLIAM G. HASTINGS,
HON. GEORGE A. DAY,
HON. JOHN S. KIRKPATRICK,

DEPARTMENT No. 2.
HON. SAMUEL H. SEDGWICK,          COMMISSIONERS.
HON. WILLIS D. OLDHAM,
HON. ROSCOE POUND,

DEPARTMENT No. 3.
HON. EDWARD R. DUFFIE,
HON. JOHN H. AMES,
HON. I. L. ALBERT,

---

## FRANK FIALA ET AL. V. JOHN V. AINSWORTH, RECEIVER.

FILED NOVEMBER 20, 1901. No. 10,464.

Commissioner's opinion, Department No. 2.

1. **Assistant Cashier:** CONDITION OF BOND. A condition in the bond of an assistant cashier of a bank that he will "honestly, faithfully and efficiently discharge the duties of such position" is a guaranty not only of the personal honesty of such officer, but also a guaranty of his competency, skill and diligence in the discharge of his duties.

5                                    (1)

2. **Assistant Controlled by Superior Only Within Scope of Authority.** Within the scope of the cashier's authority, and so long as he is apparently acting on behalf of the corporation, the cashier's directions may control the assistant cashier and the teller; and the latter may not be required to look beneath the surface of his superior's acts. But, when he is led to believe that the cashier is violating his own duty to the bank, and is taking the bank's funds for his own ends, irregularly, and without authority from the directors, the assistant cashier has no more right to aid in or connive at such misappropriation than if it were being perpetrated by a stranger.

3. **Acceptance and Retention of Bond Tantamount to Approval.** The fact that the bond of an assistant cashier of a bank was delivered to the cashier of such bank, who was one of the directors, and that the assistant cashier entered upon the duties of his office, under such bond, and that such bond was retained by the cashier of the bank, is sufficient to establish the acceptance of the bond, though no acceptance or approval of such bond is shown by the minutes of the board of directors.

4. **Negligence: RECOVERY.** To authorize a recovery for negligence the damage complained of must be the natural and proximate result of the negligence and not a remote and conjectural one.

ERROR from the district court for Fillmore county. Tried below before HASTINGS, J. *Reversed.*

*John W. Barsby, Frank Dolezal* and *Cook & Cook,* for plaintiffs in error.

*Fayette I. Foss, J. D. Pope, C. H. Sloan, B. V. Kohout* and *R. D. Brown, contra.*

OLDHAM, C.

This is a suit brought by the receiver of the State Bank of Milligan against the assistant cashier of said bank and the sureties on his bond.

The material allegations of the petition are: That on the 28th day of February, 1894, Frank Fiala, a minor, was appointed assistant cashier of the State Bank of Milligan and that he executed and delivered to the said bank a bond, in the penal sum of $5,000, containing the following condition: "Whereas, On the 1st day of February, 1894, the aforesaid Frank Fiala was appointed assistant cashier of the State Bank of Milligan, at Milligan, Nebraska, and

by virtue thereof is authorized to do and perform the duties generally appertaining to the office and position of assistant cashier in such a bank as well also as to do and perform any other clerical work and other business pertaining to the running, management, and conduct of the business of said bank which by the directions of the officers of the said bank may have heretofore been or may hereafter be entrusted to him, the said Frank Fiala, now, therefore, the condition of this obligation is such that if the said Frank Fiala honestly, faithfully, and efficiently discharge the duties of such position under its present or subsequent appointment thereto, and true, just and accurate account make of for all moneys, property, papers, or assets of any kind or description which may come into his hands, possession, control, or discharge as such as long as he may be connected with the said bank, then and in such event this obligation to be null and void, otherwise to be and remain in full force and effect"; that said bond was accepted by said bank, and that said Fiala commenced the duties of said assistant cashier of said bank. The petition then alleges that at the time that said Fiala was assistant cashier of the said bank one W. J. Zirhut was the cashier of said bank; and that said Zirhut on October 25, 1894, took $1,000 of the money of said bank, and on November 8, $1,000, and on November 13, $2,000, and on November 20, $1,000, and on the — day of January, 1895, $3,000, and appropriated the same to his own use with the full knowledge of the said Frank Fiala, and by an agreement with the said Fiala, that the said Fiala would keep quiet and say nothing about the transaction. The petition also alleges that the said Zirhut, cashier of the said bank, placed in the said bank certain fraudulent and forged notes, all in the sum of $6,915.65, and that certain moneys were withdrawn from the bank by the said Zirhut by discounting these forged and fictitious notes to the said bank, and that the said Frank Fiala assisted the said Zirhut in concealing and covering up such fraudulent transactions, to the damage of the bank. To this petition the defend-

ants' sureties answered separately, admitting that they had signed the bond sued on, but denying that said bond had ever been delivered to, or accepted or approved by, the State Bank of Milligan; denying that the conditions of the said bond had ever been broken by the said Frank Fiala, or that, under the conditions of his bond, he was in any manner liable for the conduct of W. J. Zirhut, cashier of said bank. The answer also charged that the loss to said bank, complained of in the petition, was caused by the gross negligence of the president and the board of directors of said bank in their dealings with the affairs of the said bank, and that they had full knowledge of the peculations and embezzlements of the cashier, W. J. Zirhut, long prior to the time that he absconded; and that, notwithstanding such knowledge, they negligently permitted him to remain in full charge of said bank. The defendant, Frank Fiala, filed a separate answer specifically denying any knowledge of the misconduct of W. J. Zirhut, except such as was communicated to the directors of the said bank, and alleging substantially the same defenses as those contained in the answer of defendant's sureties. Plaintiff replied, denying the allegations in each of these answers. The jury found a verdict for the plaintiff against all the defendants in the sum of $4,700, on which judgment was rendered, and defendants bring error to this court.

In the petition filed in this court by the defendants error is alleged against the sufficiency of the petition to sustain the judgment and against the sufficiency of the evidence to sustain the judgment, and against the action of the trial court in giving and refusing instructions. In determining the question of the sufficiency of the petition against the sureties on the bond, we must first examine the conditions of the bond on which the breach is alleged and ascertain what their liabilities are under these conditions. The conditions, briefly stated, are that the said Frank Fiala shall honestly, faithfully and efficiently discharge the duties of his position as assistant cashier in said bank. A condition

of this kind in the bond of a cashier or an assistant cashier of a bank has been held not only to guarantee the personal honesty of such officer, but also to guarantee his competency, efficiency and diligence in the discharge of his duties. *American Bank v. Adams,* 12 Pick. [Mass.], 303; *Minor v. Mechanics' Bank of Alexandria,* 1 Pet. [U. S.], 46.

The next question to be determined is, What duty the assistant cashier owed to the directors of the bank with reference to furnishing them information of the misconduct of his superior officer, the cashier? Under the allegations of the petition, the assistant cashier performed the duties in the bank which generally appertain to the office of bookkeeper and teller; and, consequently, the question as to his liability for the fraudulent acts of his superior officer depends on whether he owes any duty to the bank beyond the ordinary duty of obeying the cashier. In the case of *Hobart v. Dovell,* 38 N. J. Eq., 553, 566, this question was before the court in a case in which the teller of the bank was sought to be held civilly liable for the embezzlements of the cashier. Dixon, J., in rendering the opinion, says: "For knowingly assisting in such an abstraction, the teller would be as responsible to the bank as if he had spent the money himself. He was an officer of the bank, having certain prescribed duties, for the faithful performance of which he was bound directly to the corporation. No orders of the cashier could exculpate him in the breach of those obligations. Within the scope of the cashier's authority, and so long as he was apparently acting on behalf of the corporation, the cashier's directions might control the teller, and the latter might not to be required to look beneath the surface of his superior's acts. But when he was led to believe that the cashier was violating his own duty to the bank, and was taking the bank's funds for his own ends, irregularly, and without authority from the directors, the teller had no more right to aid in or connive at such misappropriation than if it were being perpetrated by a stranger. The same prin-

ciple would hold if the embezzler were a director or the president. Such misconduct on the part of Dovell we think the evidence tends to establish in more than one instance; and so far as it helped to effect a loss to the bank, he is answerable." We believe that the opinion just quoted from properly declares the law, and as the petition in the case at bar alleges that the assistant cashier assisted and aided in concealing fraudulent practices of the cashier, we think that it charges a good cause of action on the bond against these defendants.

The next question urged is that there was no delivery of the bond, nor any acceptance of it by the directors of the bank. The undisputed facts with reference to the delivery of the bond are that after the bond was prepared and signed, Fiala, the assistant cashier, delivered it to Zirhut, the cashier of the bank, and that Zirhut kept the bond and the bank officers found it among his papers after he had absconded. We think that the fact that the bond was delivered to the cashier of the bank, who was one of the directors, and that Fiala entered upon the duties of his office under such bond, and that such bond was retained by one of the directors of the bank, is sufficient to establish the acceptance of the bond, though no acceptance is shown by the minutes of the board. *Pryse v. Farmers' Bank,* 33 S. W. Rep. [Ky.], 532; *Bank of United States v. Danbridge,* 12 Wheat. [U. S.], 64; *Dedham Bank v. Chickering,* 3 Pick. [Mass.], 335.

The evidence with reference to the taking of the $1,000 from the bank by Zirhut on October 25, 1894, is that this money was procured by a draft signed by Zirhut as cashier of the bank and drawn on Tootle, Lemon & Co., of St. Joseph, Mo., in favor of McLain Bros., of Chicago, Illinois. The evidence shows that Fiala had no notice whatever at the time of the drawing of this draft; that the draft stub was marked "spoiled" by Zirhut; and that the first intimation that Fiala received of this draft was when the monthly statement was sent to the bank by Tootle, Lemon & Co. As soon as this statement came, Fiala immediately noti-

fied the cashier, Zirhut, that the statement was not correct, and the cashier told him that he would make it all right, and marked the draft with a cross and laid it to one side. This was all the evidence of any wrong-doing, with reference to this transaction, that is charged against the assistant cashier, and we think that this is not sufficient to entail a liability, either on him or his bondsmen, for this transaction. Now, the only theory on which plaintiff seeks to fasten the liability for this draft on the assistant cashier, is that he, Fiala, should have gone to the board of directors and notified them of this mistake. The evidence shows that this board of directors had never held a meeting while Fiala was assistant cashier, and that none of them lived at Milligan, or were present there, except Zirhut, the cashier. The case of *Second Nat. Bank v. Burt*, 93 N. Y. App., 233, 240, was an action against the cashier of a bank for discounting drafts without submitting them to the advisory committee of the bank, as provided by a by-law of that institution. The facts show that this committee had been entirely neglecting their duty with reference to the business of the bank, and had been disregarding the by-law for the violation of which the cashier was sought to be held. Ruger, C. J., in delivering the opinion, says: "The undisputed evidence in the case shows that these by-laws were from the first uniformly disregarded in the practical management of this bank, with the knowledge and acquiescence of its officers. Such laws were equally as obligatory on the president and various committees therein referred to as upon the cashier, and impliedly required them either to attend at the bank at stated periods to perform the duties enjoined upon them, or at least to keep themselves accessible to the cashier and in a position to be conveniently consulted by him according to the requirements of the business. To impose on the cashier the duty of carrying on the business of a bank and yet hold him responsible for a neglect of duty in not consulting officers and committees who apparently held no meetings and systematically absented themselves

from the performance of their duties is an imposition which the law will not tolerate. It would be quite impracticable for the managing officer of a bank required to keep it open daily to leave his place of business as each transaction requiring attention occurred to look up persons engaged in other employments and consult them in regard to such transactions."

The evidence with reference to the charge against the defendant for the $1,000 taken by the cashier on November 8, the $2,000 on November 13, and $1,000 on November 20, all in 1894, shows that the drafts, like the one just considered, were drawn by the cashier in favor of McLain Bros. on Tootle, Lemon & Co. and that the stubs of these drafts were marked "spoiled," and that Fiala had no notice of the drawing of them by the cashier. The evidence also shows that before the statement of charges for the drafts from Tootle, Lemon & Co. had been sent to the bank and before Fiala had any knowledge that any such drafts had been drawn, Zirhut, the cashier of the bank, himself, notified the president and directors of the bank that he had been speculating on the Board of Trade in Chicago, and that he had lost $5,000. Two directors of the bank denied that he had told them that he had lost the bank's money, but admitted that he said that he had lost $5,000. Zirhut, his wife and Fiala all testified that these directors were informed that he, Zirhut, had lost the bank's money. They all admit that after this notice the directors, Zirhut, and Fiala went down to Milligan and examined the condition of the bank. It also appears that Zirhut and wife gave a deed to the bank for some property that they owned in Milligan to secure his indebtedness, and that this deed was at the bank on December 1, 1894, the day that this examination was made. It also appears that after this examination the board of directors permitted Zirhut to remain in charge of the bank as cashier. We think, in view of this notice, the officers of the bank are not in shape to complain of the alleged default of Fiala in not notifying them further of the shortcomings of their cashier.

The next item for which they seek to recover is $3,000 taken from the bank about the 18th day of January, 1895. The evidence shows that this money was procured by the cashier, Zirhut, as a loan for the bank,—$1,000 of it from the First National Bank of Tobias and $2,000 from the Harbine Bank of Fairbury, the correspondent of Tootle, Lemon & Co., of St. Joseph. The evidence is that this money was procured by telegrams sent to these banks by Zirhut; that Fiala knew nothing of the transaction whatever; that, when the money came to the express office, Zirhut took it out of the express office, and that he then went to the post-office and got the statement of the accounts sent by the banks and destroyed them, put the money in his satchel, and absconded. There is no claim that Fiala had any knowledge of, or any connection whatever with, this transaction, and the only theory on which plaintiff claims that the defendants should be held for this loss is that if Fiala had notified the directors of the bank of all the other misconduct of their cashier they would have discharged him before he had an opportunity to steal this amount of money from the bank. It is an elementary principle that to recover for negligence the damage must be the natural and proximate result of the negligence complained of and not a remote and conjectural one. It would be going far into the realms of speculation to determine just how much more notice of Zirhut's shortcomings than that which the president and board of directors of the bank must have had at their meeting on the first day of December, 1894, would have induced that board to discharge him, and we don't believe that any vague theorizing on this question should be indulged in at the expense of Fiala's bondsmen. We therefore conclude that it was error for the trial court to submit this item of alleged damage to the jury.

On the charge for alleged damages to the bank by obtaining money from it by forged and fictitious notes, we think there is some evidence offered by the plaintiff tending to show the liability of the assistant cashier for knowingly

aiding the cashier in concealing these transactions from the directors; but the court, in its instructions, gave all the alleged items of damage in charge to the jury and it is impossible to tell which item or items their verdict was based upon.

It is therefore recommended that the judgment of the district court be reversed and the cause remanded.

SEDGWICK and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.