STATE OF MISSOURI, at the Relation of CONSOLIDATED DISTRICT C-4 of CALDWELL COUNTY, MISSOURI, Relator, v. W. H. HOLMES, State Auditor of Missouri, Respondent, No. 42225—245 S. W. (2d) 882.

Court en Banc, February 11, 1952.

*Nolan M. Chapman, Don Chapman* and *Nolan M. Chapman, Jr.*, for relator.

*J. E. Taylor*, Attorney General, and *Richard F. Thompson*, Assistant Attorney General, for respondent.

1020

 TIPTON, J.—This is an original proceedings in mandamus in this court to compel the respondent to certify and register bonds in the sum of $209,000 of the relator school district. In his amended return the respondent challenged the validity of the proceedings to organize the relator school district and also challenged the validity of the $209,000 bond issue offered for registration.

This court appointed the Honorable Dimmitt Hoffman, judge of the thirtieth judicial circuit, as special commissioner to take testimony, and make findings of fact and conclusions of law in this proceedings. In his report to this court he found the election for the consolidation of the relator school district "was fairly carried on and there was no fraud in conducting the same: that it was a free and fair expression of the will of the voters." In the hearing before our commissioner an amended stipulation was filed which stated that on the date of the bond election, September 20, 1949, the bonds in the sum of $209,000 exceeded 5 per cent of the value of the taxable tangible property within the school district as shown by the last completed assessment for state and county purposes, which was for the year 1948. The bonds were presented to the respondent for registration on August 8, 1950. At that time the 1949 assessment was completed and bonds in the sum of $209,000 did not exceed 5 per cent of the taxable tangible property in the school district. On these facts our commissioner concluded that under section 26(b) of article VI of our 1945 Constitution the last completed assessed valuation before the bond election governed under this constitutional provision and not the last completed assessed valuation before the date of the issuance, sale and delivery of the bonds.

On November 23, 1951, a stipulation between relator and respondent was filed in this court which provided: "It is stipulated and agreed by the parties hereto that the only disputable question for the Court to

consider is, whether under Section 26 b of Article VI of the Missouri Constitution of 1945 the controlling valuation of tangible taxable property, in ascertaining the amount of indebtedness the school district may incur, is to be determined as of the date of the bond election or as of the date of the issuance, sale and delivery of the bonds.''

 That exact question was before this court in the case of State ex rel. City of Dexter v. Gordon, 251 Mo. 303, 158 S. W. 683. The majority opinion in that case held that the assessed valuation is to be determined as of the date of the election, while the minority opinion held that the indebtedness is not incurred until the bonds are both issued and sold. In ruling that case, we said:

''The 'assessments' designated in the Constitution as necessary to be considered in determining the per centum of indebtedness, mean the two successive, antecedent, completed assessments made by the State Board of ·Equalization previous to the incurring of the indebtedness. * * *

''The closing clause of the constitutional limitation under discussion, expressed in the words 'previous to the incurring of such indebtedness' has reference to the time when the constituted authority of a subdivision is required to ascertain whether the proposed indebtedness exceeds the constitutional limit and not to the time when such debt, if authorized, will become obligatory.

''The foregoing general deductions are applicable under the facts in the case at bar. Relator, the city of Dexter, is one of the subdivisions named in the Constitution; the board of aldermen of said city is the constituted authority under the statute (Secs. 9355, 9544, R. S. 1909) to initiate a proceeding for the incurring of an indebtedness and to issue bonds, upon being legally authorized so to do, in payment of same. Acting under this power, said board adopted an ordinance directing the holding of a special election for the purpose of enabling the voters to approve or reject a proposition for the issuance of bonds aggregating the sum of $53,000. The board in ascertaining whether the proposed indebtedness was within the constitutional limit took the assessment as of June 1, 1910, at which time the assessment of June 1, 1911, was not completed. On this basis the proposition was submitted to the voters, who approved same by the required majority and the bonds were issued, and submitted to the Auditor for registration. The action of the board in taking the assessment as of June 1, 1910, was unauthorized, and the assessment as of June 1, 1909, should have been taken as the basis because it was 'the assessment next before the last assessment previous to the incurring of the indebtedness;' but the assessed value of the property of said city as of June 1, 1909, was $485,466, and the indebtedness sought to be incurred was $53,000, or more than ten per cent of said assessment.

"The action of the board not being in compliance with the Constitution, and the proposed indebtedness being in excess of the prescribed limit, the bonds are void." 251 Mo. l. c. 309-311.

In the case of Steinbrenner v. City of St. Joseph, 258 Mo. 318, 226 S. W. 890, l. c. 892-893, in an opinion prepared by Graves, J., who was one of the dissenting judges in the Dexter case, we said:

"Upon this question this court divided in State ex rel. City of Dexter v. Gordon, 251 Mo. 303, 158 S. W. 683, supra. The majority opinion fixed this rule:

" 'The closing clause of the constitutional limitation under discussion, expressed in the words "previous to the incurring of such indebtedness," has reference to the time when the constituted authority of a subdivision is required to ascertain whether the proposed indebtedness exceeds the constitutional limit, and not to the time when such debt, if authorized, will become obligatory.'

"This ruling has since received express sanction in Sidey v. City of Marceline, 237 Fed. 168, 150 C. C. A. 314, and in Lewis v. Brady, 17 Idaho, loc. cit. 256 et seq., 104 Pac. 900, 28 L. R. A. (N. S.) 149, there is some persuasive argument in behalf of the rule. But, be this as it may, we do not feel constrained to depart from the rule of the majority in the Gordon Case, supra. This is a question upon which there should be a fixed rule, and, when once fixed, there should not be radical departures. The public business requires this much."

The case of State ex rel. City of Carthage v. Hackmann, 287 Mo. 184, 229 S. W. 1078, l. c. 1079, followed the City of Dexter case. In ruling the case, we said:

"The provision of said section [sec. 12, article X, Constitution of 1875] limits the indebtedness that relator and other cities may incur in any year to 'five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes, previous to the incurring of such indebtedness.' The assessments mentioned in this section mean completed assessments. State ex rel. City of Dexter v. Gordon, 251 Mo. 303, 158 S. W. 683; State ex rel. v. Wabash, 251 Mo. 134, 158 S. W. 26; Steinbrenner v. St. Joseph, 226 S. W. 890. The clause 'previous to the incurring of such indebtedness' means previous to the authorization of the indebtedness in the election held by the voters of the municipality. State ex rel. City of Dexter v. Gordon, supra; Steinbrenner v. St. Joseph, supra. The State Board of Equalization had not completed the equalization of the 1918 assessment and certified its action thereon previous to September 16, 1919, the date of the election, and hence the assessment of 1916 was the 'next before the last assessment,' and must be used as the measuring rod."

In the case of State ex rel. and to Use of Jamison, Collector of the Revenue, v. St. Louis-San Francisco Ry. Co., 318 Mo. 285, 300 S. W. 274, l. c. 276, we said:

"The term 'last assessment' is merely an arbitrary measuring rod which is not necessarily accurate at the time it is applied. In fixing the limit of indebtedness under article 10, § 12, the 'assessment next before the last assessment' is used as the measuring rod, notwithstanding the actual assessed value in the taxing district may have markedly increased or decreased between the date of such 'assessment next before the last assessment' and the time when the particular bonds are voted."

In the case of State ex rel. School District of Webster Groves v. Hackmann, 294 Mo. 190, 241 S. W. 913, this court followed the City of Dexter case.

The above cases definitely hold that the phrase, "in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for State and county purposes, previous to the incurring of such indebtedness," as found in section 12 of article X of the 1875 Constitution, means the last completed assessment before the date the bond election is held. In other words, "the clause 'previous to the incurring of such indebtedness' *means previous to the authorization of the indebtedness in the election held by the voters of the municipality.*" (Italics ours.) State ex rel. City of Carthage v. Hackmann, supra. This is an "arbitrary measuring rod" that fixes the last completed assessment before the date of the bond election. Of course, if the bonds authorized by two-thirds of the voters at a bond election were never negotiated there would never be any indebtedness of the municipality that held the bond election.

But relator contends that the above cited cases are not controlling here because section 12 of article X of our 1875 Constitution was substantially changed by section 26(b) of article VI of our 1945 Constitution. That section is as follows:

"Any county, city, incorporated town or village, school district or other political corporation or subdivision of the state, by vote of two-thirds of the qualified electors thereof voting thereon, may become indebted in an amount not to exceed five per centum of the value of taxable tangible property therein as shown by the last completed assessment for state and county purposes."

There are two changes made by this section: first, this section uses the following language, "last completed assessment for state and county purposes," while the 1875 Constitution required "the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for State and county purposes." The only effect this change had was to move the assessment that was the measuring rod up one year closer to the date of the election. The other change is that the present section uses "tangible property" instead of "all taxable property" and inserted the word "completed" before the word "assessment" which was not in the 1875 Constitution, but

we had held in the above cited cases that the word "assessment" used in the 1875 Constitution meant "completed assessment." So by adding the word "completed" to the 1945 Constitution, its meaning does not vary from our 1875 Constitution as construed by this court.

Relator cites many cases from other states to support its contention. There were a number of cases from other jurisdictions cited in the dissenting opinion in the City of Dexter case. We do not think the cases from other jurisdictions are of any value because of the similarity of the language used in the 1875 Constitution and the 1945 Constitution. *"This is a question upon which there should be a fixed rule, and, when once fixed, there should not be radical departures. The public business requires this much."* (Italics ours.) Steinbrenner v. City of St. Joseph, supra. We will adhere to our former ruling on this point because we think the language used in the 1945 Constitution does not contemplate any change from our interpretations of the 1875 Constitution.

The relator also cites our case of Kansas City Power & Light Co. v. Town of Carrollton, 346 Mo. 802, 142 S. W. 2d 849. The purpose of that case was to enjoin the town from constructing a municipal electric light and water plant and to procure a declaratory judgment construing certain provisions of the ordinance so as to compel the town to either purchase appellant's plant or renew its franchise. In speaking of the contract for the purchase of water and electricity during the life of the franchise, we held that under section 12, article X of the 1875 Constitution this was a debt, but each yearly installment becomes a debt as it falls due and if it exceeds the revenue for that year in which it falls due there is no way in which it can be paid except by a levy under said section 12. In the opinion on the motion for rehearing, in making the distinction on the debt referred to in the original opinion with reference to the contract for the purchase of water and electricity by yearly installment, we said, "As to bond issues, of course, the debt is not contracted until the bonds are negotiated even though previously authorized." 142 S. W. 2d l. c. 857.

The relator seizes upon this quotation to support its contention. However, we think this language used in the Town of Carrollton case is in line with our cases previously referred to in construing our 1875 Constitution.

Under the admitted facts the bonds in question were in excess of 5 per cent of the value of the taxable tangible property in relator school district as shown by the last completed assessment for state and county purposes before the date of the bond election; therefore, the respondent rightfully refused to register the bonds in question.

Our writ heretofore issued should be quashed. It is so ordered. All concur.