# WILLIAM H. STEINBRENNER et al. v. CITY OF ST. JOSEPH et al., Appellants.

### In Banc, December 13, 1920.

1. **ORDINANCE: To Increase Indebtedness: When Effective: Exception to Referendum Statute.** An ordinance providing for the submission to the legal voters of a proposition to issue improvement bonds is not affected by the statute (Sec. 8859, R. S. 1909) declaring that no ordinance passed by the council, "except an ordinance for the immediate preservation of the public peace, health, or safety," shall go into effect "before ten days from the time of its final passage." Such an ordinance does not purport to be complete, but by its terms provides for its reference to the legal voters, and therefore said referendum statute has no application to it.

2. ————: ————: ————: **Published Notice of Election.** The beginning within ten days after the passage of an ordinance providing for the increase of city indebtedness, of the publication of notice of an election at which the legal voters can approve or reject such proposed increase, is not a publication before the ordinane takes effect; for the statute providing that no ordinance, except those for the immediate preservation of the public peace, health and safety shall take effect until ten days after its final passage, has no application to such an ordinance. As soon as the ordinance is approved by the mayor, the publication of the notice may be begun, and all other acts which the law requires to be done, including a presentation of the ordinance to the circuit judge, may be proceeded with, in the order provided by the ap-*Held,* by WOODSON, J., that, assuming that the statute applies and that the ordinance did not take effect for ten days after it was approved by the mayor, the publication of a notice three days before the ordinance became effective and for twenty-five days thereafter, was not a publication for four consecutive weeks.

3. **CITY INDEBTEDNESS: Assessment.** The words "assessment" and "last assessment" used in that part of the Constitution which says that a city's indebtedness shall not exceed five per cent of the value of taxable property in the city as shown "by the assessment next before the last assessment for state and county purposes, previous to the incurring of such indebtedness," means a completed

assessment; that is, one which has passed through all the state agencies which have to do with property assessments.

4. ———: ———: **Date of Incurring.** The words "previous to the incurring of such indebtedness," used in the constitutional provision that city indebtedness shall not "be allowed to be incurred to an amount including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes, previous to the incurring of such indebtedness," has reference to the property values at the time the officials are acting, and not to what may be the property values at the time of the actual sale and disposition of the bonds. The statutes make plain the debt-incurring period, or as of what date the property values and existing debts are to be ascertained, and agree with the rule announced in State ex rel. City of Dexter v. Gordon, 251 Mo. 303, that it is "the time when the constituted authority of a subdivision is required to ascertain whether the proposed indebtedness exceeds the constitutional limit, and not to the time when such debt, if authorized, will become obligatory."

5. ———: ———: ———: **Ordinance Enacted in 1919: Must Be Based on Assessment of 1916.** To ascertain whether the proposed bond issue, including existing indebtedness, exceeded the maximum limit of five per cent of property values fixed by the Constitution, where the ordinance authorizing "the incurring of such indebtedness" was enacted in March, 1919, and the proposition was submitted to popular vote at an election held in May, 1919, the assessed valuation for the year 1916 should be used as the basis for determining the amount of new indebtedness which could have been incurred. The Constitution requires "the assessment next before the last assessment for state and county purposes" to be used as the basis for ascertaining the assessed valuation of properties in the city; and as the assessment begun in June, 1918, was not completed until September, 1919, that assessment can not be considered at all where the ordinance was enacted in March and approved in May, 1919, but the one begun in June, 1917, was the first completed assessment that can be considered and the "last" assessment "before" that assessment was the one begun in June, 1916.

6. ———: **Excessive: Merchants' Assessments.** Where the total valuation of property in the city, by the assessments of 1916, was $42,473,790, and the existing and proposed indebtedness amounted to $2,434,700.21, making the indebtedness $311,010.71 in excess of five per cent of the total assessed valuation, the bonds authorized by the ordinance on March 31, 1919, and approved at an election held on May 27, 1919, were void; and the result being the same

whether the merchants' and manufacturers' assessments for 1919 or for 1918 or for 1917 rather than those for 1916 be taken as the basis of the calculations, it becomes unnecessary to discuss what assessment of merchants and manufacturers should be considered.

Appeal from Buchanan Circuit Court.—*Hon. Lawrence A. Vories,* Judge.

AFFIRMED.

*L. V. Stigall,* City Counselor, *C. L. Faust, Strop & Mayer,* and *Culver & Phillip* for appellants.

(1) The publication of notice of the special election was sufficient. Sec. 8672, R. S. 1909; State ex rel. Webber v. Tucker, 32 Mo. App. 620; Young v. Downey, 150 Mo. 317; Standefer v. Dykeman, 151 Mo. App. 600. (2) In ascertaining the city's indebtedness the amount in the sinking fund levied and collected for the payment of the principal of outstanding bonds, and applicable to no other purpose, should be deducted. 5 McQuillin on Munic. Corp. (Ed. 1911) p. 475; Stone v. Chicago, 207 Ill. 492; Kelley v. Minneapolis, 63 Minn. 125; Schuldice v. Pittsburg, 234 Pa. St. 90; Euclaire v. Water Co., 137 Wis. 517; Williamson v. Aldrich, 21 S. D. 13; Leoy v. McClellan, 196 N. Y. 178; Bank v. Grace, 102 N. Y. 313; State v. Hopkins, 14 Wash. 59, 44 Pac. 134; Rice v. City of Milwaukee, 76 N. W. 341; Johnson v. County Commrs., 7 Okla. 686, 56 Pac. 701; Dively v. City of Cedar Falls, 27 Iowa, 227. (3) The trial court erred in holding that the city's indebtedness of the date of the enactment of the ordinances or the date of the election, rather than the date of the issuance and sale of the bonds, was controlling. Mo. Const., art. 10, sec. 12; State ex rel. v. Gordon, 251 Mo. 303; Buchanan v. Litchfield, 102 U. S. 278; Electric Co. v. City of Newton, 42 Fed. 728; Dudley v. Board of Commrs., 80 Fed. 677; Board of Commrs. v. Sutliff, 97 Fed. 281; Corning v. Board of Commrs., 102 Fed. 58, 180 U. S. 710; 1 Dillon,

Municipal Corporations (5 Ed.), p. 403, sec. 207; Black v. Early, 208 Mo. 312; Beard v. City of Hopkinsville, 44 Am. St. 241, note; O'Rear v. Sartain, 193 Ala. 275; Redding v. Esplin Borough, 207 Pa. 248; Goodson v. Dean, 173 Ala. 301; Buxton v. Craig Co., 155 Pac. 215; 15 Corpus Juris, 577; Secs, 11617, 11646, R. S. 1909.

*W. H. Haynes* and *W. B. Norris* for respondents.

(1) The "last assessment" referred to in the Constitution means the completed assessment by the State Board of Equalization showing the aggregate assessed valuation of all the properties in the city at the time of the authorization of the issue of the bonds. State ex rel. Blades v. Wabash Railroad, 251 Mo. 134; Culbertson v. City of Fulton, 127 Ill. 30; State ex rel. Morse v. Conwell, 40 S. C. 26; State ex rel. Vandiver v. Tolley, 37 S. C. 551; City of Guthrie v. Bank, 4 Okla. 194; Germania Saving Bank v. Town of Darlington, 50 S. C. 337. (2) The assessment to be considered in determining whether the proposed indebtedness exceeds the constitutional limitation is the assessment next before the last completed assessment for state and county purposes, previous to incurring the indebtedness; that is, previous to the time of the popular election to increase the indebtedness. State ex rel. City of Dexter v. Gordon, 251 Mo. 303; Sidney v. City of Marceline, 237 Fed. 168; Prickett v. City of Marceline, 65 Fed. 469; State ex rel. City of Sutton v. Babcock, 24 Neb. 640; McGuire v. City of Philadelphia, 245 Pa. 287; Railroad v. Village of Wilbur, 63 Neb. 624; State v. Babcock, 20 Neb. 522; Wilkerson v. Van Orman, 70 Iowa, 230; Lewis v. Bradey, 17 Ida. 251, 104 Pac. 900. (3) The date of issue mentioned in the bonds and the ordinance under the charter of cities of the first class means that upon said date the validity of the bonds is to be determined, and not the date of the actual delivery and sale of them. Secs. 8668, 8669, 8670, 8671, 8672,

8674, 8675, R. S. 1909; Wright v. Irrigation District, 138 Fed. 313; Gage v. McCord, 5 Ark. 227; Moller v. Galveston, 23 Tex. Civ. App. 693, 57 S. W. 116. (4) The ordinances providing for the election were passed on the 21st day of April, 1919. Under the charter of cities of the first class they did not become effective as ordinances and did not go into effect until ten days after their passage, which, was the 2d day of May, 1919. Sec. 8859, R. S. 1909; State ex rel. Wagner v. Summers, 144 N. W. 730; Ex parte Hoffman, 155 Cal. 114; State ex rel. Dawson v. Commission, 92 Kan. 247; Meade v. Dane County, 155 Wis. 632. (5) The words in an act "after the passage and approval" means after the act becomes effective as a law and is in full force and effect as determined by the provisions of the general law. So the words used in Section 8671, "after the passage and approval of such ordinance" the city shall present the same to the judge of the circuit court, should be con-strued to mean after the ordinance became effective as a law. State ex rel. Brown v. McIntosh, 205 Mo. 629; Ex parte Lucas, 160 Mo. 218; Harding v. People, 10 Cal. 387; Mills v. State Board, 135 Mich. 525; State ex rel. v. Bemis, 45 Nev. 724.

GRAVES, J.—Action by certain taxpayers of the City of St. Joseph, to restrain such city from issuing improvement bonds in the sum of $1,850,000. The peti-tion charges some thirteen reasons for the invalidity of this bond issue. The ones chiefly urged are (1) the fail-ure of legal notice, and (2) that such an issue would allow the city to become indebted in excess of the consti-tutional limitation.

On March 31, 1919, there were introduced five sepa-rate ordinances in the Common Council of the City of St. Joseph, and these were passed by such Council and ap-proved by the Mayor on the 21st day of April, 1919. These five several ordinances carried the total of $1,850,000 proposed bonded indebtedness. These ordi-nances fixed the election date at May 27, 1919. On April

14, 1919, the County Court, in anticipation of said election, made an order for a special registration of voters for said election, such registration to be held April 29th and 30th, 1919.

On April 28, 1919, the city, pursuant to the provisions of Section 8671, Revised Statutes 1909, presented the ordinances to the Judge of the Circuit Court and obtained from him a certificate to the effect that the total amount of said bonds could be issued without violating the Constitution of the State. The date of the issuance of the bonds was fixed as of July 15, 1919.

The election was held on May 27, 1919, each of the five propositions being voted upon separately. Each carried by an overwhelming vote, so that unless there are fatal defects in the proceedings, or that the proposed issue so increased the indebtedness of the city as to be violative of constitutional provisions, the bonds are valid. Of the objections in the course of the opinion, where the relevant facts can best be outlined.

I. It is urged that the notice of the election was not sufficient. The lower court held that the bonds were void by a general judgment for the plaintiffs. The particular grounds upon which the injunction against the issuance of the bonds was made, are not specified. **Effective Upon Mayor's Approval.** We are therefore left to grapple with the whole category of objections lodged in the petition, save and except such as have been abandoned here, or as might have been abandoned below as indicated by the course of the trial. The statute which governs the publication of notice in this case is Section 8672, Revised Statutes 1909, which reads:

"After such certificate the city shall cause to be published, once each week for four consecutive weeks, in the newspaper at the time doing the city printing, the last insertion to be not more than five days prior to the time for election, a copy of such ordinance and certificate, with a proclamation, according to law, that an election will be held at the time appointed in the ordinance

for the voters of the city to vote on the proposition for the issue of bonds, as proposed by the ordinance.''

The following admission was made of record:

''It is admitted in this case that the ordinances referred to in the petition and introduced in evidence were published on April 29, 1919, May 5, 1919, May 12, 1919, May 19, 1919, and May 26, 1919, in the St. Joseph Gazette, the paper at the time doing the official printing for the City of St. Joseph.''

It will be observed, that there were five publications, the last of which was within five days of the election. The statute, supra, only requires four publications, ''one each week for four consecutive weeks.''

The point made is, that under the law the ordinances did not become effective until May 2, 1919, and the city had no power before that date to act in anyway thereunder.

St. Joseph is a city of the first class, of which we will take judicial knowledge. Concerning such cities we have Section 8859, Revised Statutes 1909, which, so far as applicable, reads:

''No ordinance passed by the council, except when otherwise required by the general laws of the State or by the provisions of this article, except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency and is passed by a four-fifths vote of the council, shall go into effect before ten days from the time of its final passage.''

This is the referendum statute for such cities, and the ordinances before us do not by their terms fall within the excepted classes named in this statute, unless the very face of the ordinances exempt them from this provision. These ordinances do not in the language of the statute, supra, contain ''a statement of its urgency,'' although the vote in the council was unanimous, so far as the vote of the five present members, show. By Section 8548, the common council of cities of the first class

shall consist of five members, so that there was a unanimous vote on these ordinances, and they might have come within the excepted classes under Section 8859, supra, had they contained the necessary recitation of "a statement of its urgency." This purely on the theory that they were ordinary ordinances, and not ordinances of the character shown by their face.

In our judgment Section 8859 has no reference to ordinances of the character here involved. As said, this is the referendum statute of cities of the first class. Its purpose was to have a reference to the voters upon an ordinance that would become effective at the date of its passage and approval, and then ten days was allowed for the purpose of the reference. But the ordinances before us are mere references to the people of the questions therein involved. They do not purport to be completed ordinances, for they themselves provide for a reference of their terms and the adoption of their terms, and the questions by them submitted. They are ordinances only in a limited sense. They are really proposed ordinances for the ratification of the voters. When ratified by the voters, they become ordinances. They might be said to fall within that line of ordinances mentioned in said Section 8859, supra, by the clause "except when otherwise required by the general laws of the State," if perchance this section covered proposed ordinances of this kind at all. We do not think that this section applies at all.

When the mayor signed these proposed ordinances that branch of the legislative power had done all that could be done to make them effective. When the voters ratified them, they became finally effective, barring legislative or constitutional defects. The passage of such proposed ordinances was but the first step in the general plan to increase the indebtedness of the city. This step was complete upon the approval of the Mayor, and all other steps could then be taken, in accordance with the proposed ordinances, as would be necessary, under the

city charter, to complete the ordinances by a vote of the electorate. Under this view of the law there were five valid publications of the notice, and if this be true, all objections as to the notice-fails. Not only do the objections to the notice fail, but all objections to things done under the proposed ordinances from April 21st, the date of their approval by the Mayor. We say this, because, among other things, it is urged that the city was premature in presenting the ordinance to the Circuit Judge. We rule that the city had the right to act under these ordinances from and after their approval on April 21, 1919. This makes the first and all five of the publications valid, and the notice was good. We need not, therefore, rule upon the question urged, that the last four publications made a legal notice.

II. What we have said in our paragraph one, supra, disposes of most of the rubbish in the case, and leaves for consideration but one or two vital questions. With our ruling all the alleged premature acts of the city under these ordinances disappear from the case. There is left at least the vital matter as to whether or not these bonds were beyond the constitutional limitations placed upon the city in the matter of incurring debts. This limitation is fixed, by Section 12 of Article X of the Constitution, which said section says:

"No county, city, town, township, school district or other political corporation or subdivision of the State shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; *nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for State and*

*county purposes, previous to the incurring of such in-debtedness."*

Counsel do not disagree upon the question of there being this five-per-cent limitation upon the City of St. Joseph. They do disagree as to whether or not this total Assessment. bond issue, when added to previous indebted- ness in fact exceeds this constitutional limit. And right here come in some questions of importance, first of which is the assessment to be considered as the basis for the calculation. The Constitution says that it must be not in excess of five per centum on the property in such city as shown "by the assessment next before the last assessment for state and county purposes, previous to the incurring of the indebtedness." And herein comes the question as to which is the proper assessment to be taken as the basis for the calculation.

The term "assessment" and "last assessment" have been construed by Division Two of this court, in the case of State ex. rel. v. Wabash Railroad, 251 Mo. l. c. 142. It is there ruled that it must be a completed assess- ment, i. e. one which has passed through all the state agencies which have to do with property assessments. This is a reasonable and well founded rule, and to it we add our approval. However, our approval adds nothing to the rule, because in State ex. rel. v. Gordon, 251 Mo. 303, a case In Banc, both opinions recognized the fact that the word "assessment" as used in the Constitution meant a completed assessment. The difference of opin- ion in the Gordon Case, supra, grew out of another mat- ter, which will become material later. Under our rule the assessments to be considered must be completed as- sessments.

III. A further important step in reaching the con- clusion here, is the date when the municipality is "in- curring" the debt within the meaning of that term as used in the Constitution. Upon this question Debt— this court divided in State ex. rel. City of Dex- Creating Period. ter v. Gordon, 251 Mo. 303, supra. The major- ity opinion fixed this rule:

"The closing clause of the constitutional limitation under discussion, expressed in the words 'previous to the incurring of such indebtedness' has reference to the time when the constituted authority of a subdivision is required to ascertain whether the proposed indebtedness exceeds the constitutional limit and not to the time when such debt, if authorized, will become obligatory."

This ruling has since received express sanction in Sidney v. City of Marceline, 237 Fed. 168; and in Lewis v. Brady, 17 Idaho, 1. c. 256 et seq., there is some persuasive argument in behalf of the rule. But be this as it may, we do not feel constrained to depart from the rule of the majority in the Gordon case, supra. This is a question upon which there should be a fixed rule, and when once fixed, there should not be radical departures. The public business requires this much.

We should add, however, that the statutes under which these bonds were being issued contemplated the property values at the time the officials were acting, and not what might be the property value at the actual sale and disposition of the bonds. [R. S. 1909, secs. 8668, 8669, 8670, 8671, 8672, 8674 and 8675.]

Among other things these sections require the city officials to present their ordinances, and the facts as to the previous assessments, and the city indebtedness, to the Circuit Judge, and receive from him a certificate to the effect the proposed bond issue, together with the existing indebtedness, will not exceed the debt-incurring power of the city. This and other things in these sections of the statute make it plain as to what should be considered the debt-creating period, and they agree with the rule in Gordon's case, supra.

IV. Under the rules of law just above stated, the assessed valuation for the year 1916 would be the basis to be used in determining the amount of indebtedness which could be incurred by the city, at the passage of these ordinances.

We have above noted that the word "assessment" as used in the Constitution means a completed assessment. The assessment which began in June, 1918, was not completed by the State Board of Equalization until September, 1919, so that at the time the city was acting in this bond matter, this was no assessment at all, or to be used for any purpose in this case. In May, 1919, the first preceding completed assessment was that of 1917, or the one begun in June, 1917. "The assessment next before the last assesment," using the language of the Constitution, could be none other than the assessment begun in June, 1916, and completed sometime in 1917. With this as the base how stands the case?

Counsel for appellant tabulate the taxable property for the years 1916 and 1917, as follows:

```
"1916:  Merchants  and  Manufacturers .......$  3,843,920.00
   "    "   Other property ..................... 38,629,870.00
"1917:  Merchants  and  manufacturers ......   4,790,000.00
   "    "   Other property ...................... 43,630,530.00"
```

Counsel likewise give figures for 1918, and the merchants' and manufacturers' tax for 1919. These will lend but little light.

Counsel for plaintiff have carefully compiled from the evidence two enlightening tables. They use two dates, May 27th and July 15, 1919. These are the dates when the ordinances were ratified, and when it was provided in the ordinances to issue the bonds. The two tables follow:

"Financial Statement of the City of St. Joseph as of Date of May 27, 1919.
    "Assessments, 1916:
```
        "Personal  Property .................. $4,740,080.00
        "Real  Estate ...................... 29,687,520.00
        "Railways  and  Bridges .............  2,070,200.00
        "Banks ............................  1,099,130.00
        "Merchants . . ....................   3,392,970.00
        "Manufacturers . . . ................    450,950.00
        "Franchises . . . ..................     732,550.00
        "Telegraphs  and  Telephones .........    300,390.00
```

Steinbrenner v. St. Joseph.

"Total Assessed Valuation ........ $42,473,790.00
"Indebtedness:
 "Bonded Debt ........... $722,500.00
 "Less Sinking Fund ...... 197,412.07   $525,137.93
 "Judgments:
"Outstanding ..................... $ 65,712.28
"Less Appeals Taken ............. $ 5,150.00   59,562.28
 "Bonds Recently Voted by the
 People of St. Joseph .................$1,850,000.00

 "Total Indebtedness ................ $2,434,700.21

 "Total Present and Proposed
 "Indebtedness ..................... $2,434,700.21
 "5% of Total Assessed Valuation .... 2,123,689.50.

 "Excess Over 5% ................ $ 311,010.71"

The total indebtedness of the city as of July 15, 1919, is shown by the following table:

"Financial Statement of the City of St. Joseph as of July 15, 1919.
 "Assessments, 1916:
  "Personal Property ................... $4,740,080.00
  "Real Estate ......................... 29,687,520.00
  "Railways and Bridges ............... 2,070,200.00
  "Banks ......................... .... 1,099,130.00
  "Merchants ...................... ...... 3,392,970.00
  "Manufacturers ................... 450,950,00
  "Franchises ......................... $732,550.00
  "Telegraph and Telephones ............ 300,390.00

  "Total Assessed Valuation ............ $42,473,790.00

 "Indebtedness:
  "Bonded Debt .............. $722,500.00
  "Less Bonds Redeemed ...... 10,300.00

    $712,250.00
  "Less Sinking Fund ...... $187,112.07   $ 525,137.93
  "Judgments Outstanding .. $ 80,503.28
  "Less Appeals Taken ...... $ 12,650.00   $ 67,853.28

  "Bonds Recently Voted by
  the People of St. Joseph ......... $1,850,000.00

 "Total Indebtedness .................. $2,442,991.21
 "Total Present and Proposed
 "Indebtedness ...................... $2,442,991.21
 "5% of Total Assessed Valuation ...... 2,123,689.50

 "Excess over 5% ........................ $319,301.71"

These figures do not permit speculation as to what should be the result of the case before us. Counsel for appellant urge that the merchants' and manufacturers' assessment for 1919 should be the one considered rather than the one for 1916 or 1917, or even 1918. Having taken the assessment of 1916 as the basis so far as other property is concerned, it would make no difference in result whether you used either of the other merchants and manufacturers assessments. The largest was in 1919, when it was $7,182,460, as against $3,843,920 in 1916. This would make an increase of $3,338,540 over 1916. If we take three per cent of this increase, we would have the debt-incurring power only increased by $166,927. Taking this from the excesses over 5 per cent in the tables above, it leaves large excesses on both May 27th and July 15th. We have used the year 1919 as to the merchants and manufacturers assessments, because it is the largest, and not because we meant to say that it was the proper assessment to be used. Even with its use the bonds are void, as being in excess of the debt-creating power of the city. Counsel for appellant do not claim that there is any way for a reversal of the instant judgment if the assessment of 1916 is made the basis. In view of the situation it becomes unnecessary to discuss (1) what assessment of merchants and manufacturers should be considered, or (2) whether the sinking funds in the hands of the city should be taken from the debts. This, because neither of the previous merchants' and manunfacturers' assessments, when considered with the other property assessment of 1916, will change the result, and the tables above allow credit for money in sinking funds. It follows that the judgment *nisi* should be affirmed. It is so ordered.

All concur, *Woodson, J.,* in separate opinion.

WOODSON, J. (concurring).—This was a suit instituted in the Circuit Court of Buchanan County by plaintiffs, taxpayers, and on behalf of themselves and

all others similarly situated, and against the defend-
ants, to enjoin the City of St. Joseph, its Mayor and
Comptroller, to restrain them, from issuing $1,850,000
of improvement bonds, purporting to have been au-
thorized at a special election held for that purpose, on
the grounds that the proceedings preliminary to the
holding of the election, as well as the election itself,
were invalid, and that the amount of the existing in-
debtedness of the city, added to the amount of said
proposed bonds, exceeded the constitutional limit of in-
debtedness the city could incur.

A trial was had which resulted in findings for, and
a decree for, the plaintiffs, enjoining the issuance of
the bonds as prayed for in the petition, and the defend-
ants duly appealed the cause to this court. The follow-
ing facts are admitted:

"The Common Council of the City of St. Joseph
enacted five special ordinances which were approved on
April 21, 1919, each of which ordinances made pro-
vision for an issue of bonds for public improvement in
said city, and ordered the submission of the ordinances
to the qualified voters of the city for their approval or
rejection at an election called for that purpose on the
27th day of May, 1919.

"Special ordinance No. 8143 was for $750,000 to
be used in constructing public sewers.

"Special ordinance No. 8144 was for $500,000 to
improve, extend and equip the city electric light plant.

"Special ordinance No. 8145 was for $50,000 to
purchase motor equipment for the city fire department.

"Special ordinance No. 8146 was for $450,000 to
acquire a site and erect, construct and equip a city hall.

"Special ordinance No. 8147 was for $100,000 to
acquire a site and erect, construct and equip a city
hospital for the treatment of contagious and com-
municable diseases.

"The election was held and the vote on the propo-
sitions ranged from a majority of 4½ to 1 to nearly 10
to 1 in favor of the bonds, as follows:

"Special ordinance No. 8143--for, 6061; against, 639.
"Special ordinance No. 8144--for, 5550; against, 1202.
"Special ordinance No. 8145--for, 6063; against, 632.
"Special ordinance No. 8146--for, 5428; against, 1293.
"Special ordinance No. 8147--for, 5836; against, 783.

"The petition assails the validity of the bonds on grounds that are separately stated and numbered from 1 to 13, only two of which were urged upon or presented to the trial court, and as we view the case, they are the only issues that can in reason be called debatable. They are:

"1. Did the city exceed the limit of its debt creating power?

"2. Was the notice of election published as required by law?

"The facts are:

"The assessed valuations for state and county purposes of all property in the city for the years in question are:

"1916
"Merchants and manufacturers .........$  3,843,920;
"Other property ...................... 38,629,870.

"1917
"Merchants and manufacturers .........$  4,790,000;
"Other property ...................... 43,630,520.

"1918
"Merchants and manufacturers ........$  6,635,570;
"Other property ...................... 53,457,170.

"1919
"Merchants and manufacturers .........$  7,182,460.

"The assessment of merchandise, raw material, etc., known as 'the merchants' and manufacturers' tax,' is made between the first Mondays of March and June in each year, is equalized by the County Board of Equalization on the first Monday in September following (the State Board of Equalization having no jurisdiction thereover), and the tax on such assessment is payable on or before November 1st, following the assessment

(Secs. 11620 and 11646, R. S. 1909). There is therefore a completed assessment of merchandise, raw material, etc., in each year—the year it is taken—while the assessment of other property is not completed until the year following that in which it is made.

"At the time of the trial of this case the merchants' and manufacturers' assessment for 1919 had been taken, equalized, and the tax had been payable for sometime— in other words, it was completed and the assessment of such property for 1918 was the assessment next before the last."

And it is contended by counsel for plaintiffs that: "The last completed assessment of other property was that of 1918, so that the assessment of such property for 1917 was the assessment next before the last. The aggregate of these gives the last complete assessment but one of all property in the city for state and county purposes, the total being $50,266,090, five per centum of which is $2,513,304.50."

The evidence showed that:

"On the day of the trial of this case, viz., October 15, 1919, the bonded indebtedness of the city was $622,250, and other indebtedness, including judgments both final and pending on appeal was $65,712.28, a total of $687,962.28. This added to the proposed bond issue of $1,850,000, would make a total of $2,537,962.28, or $24,657.78 in excess of five per centum of the assessed valuation which, as stated above, is $2,513,304.50. However, on the same day the amount in the sinking fund of the city applicable to the payment of the principal of the bonded indebtedness, and to no other purpose, was $185,727.02, and if this is properly deductible in determining the actual indebtedness it would be $161,069.24 less than five per centum of the assessed valuation."

The evidence also showed that:

"The proclamation of the Mayor calling the election was published in the St. Joseph Gazette, the official paper at the time, on April 29. May 5, May 12 and May 19 and thereafter daily to May 26 inclusive and the

election was held May 27, 1919. There were therefore five weekly publications prior to, and the last within five days of, the election, covering a period of twenty-eight days, excluding the first day of publication and including the day of election.''

Upon this showing counsel for the defendants contend that the publication of the notice of the special election was sufficient, and submits the following suggestions in support thereof:

"Notice of the special election was published as required by law.

"The publication required is: 'The city shall cause to be published, once each week for four consecutive weeks, in the newspaper at the time doing the city printing, the last insertion to be not more than five days prior to the time for election, a copy of such ordinance,' etc. [Sec. 8672, R. S. 1909.]

"The election was called for May 27, 1919. The proclamation was published, in the official paper (as well as in the News Press, the other daily newspaper), on April 29, May 5, May 12, and daily from May 19 to May 26, inclusive. The publication was therefore for four weeks, and excluding April 29, the first day of publication, and including May 27, the day of election, for twenty-eight days, for it covers one day in April and twenty-seven days in May, and the last publication, being on May 26, and the election on May 27, was 'not more than five days prior to the time for election.' This under the above statute and the decisions, is a full compliance with the requirements of the statute.''

Upon the other hand counsel for the plaintiffs contend:

"That none of the preliminary steps required by the law were taken by city prior to holding the election; that the ordinances providing for the election were invalid; that city had no power under its charter to conduct the election, and that the aggregate amount of the proposed bonds added to the existing indebtedness of the city at the time of the institution of the

.suit and at the time of the election and on the 15th day of July, was in excess of five per cent of the assessed valuation of the property in the city as shown by the assessment for state and county purposes, and that the proposed bonds to be negotiated would be issued in violation of Section 12, Article 10, of the Constitution of the State of Missouri.

"On the 2nd day of August, 1919, the defendants filed their answer, and thereafter, on the 15th day of October, the defendant refiled said answer, in which it was admitted that the defendants proposed to and were about to and would, unless restrained by the orders of the court, negotiate said bonds as authorized by said ordinances and the election held in pursuance thereof.

"The ordinances providing for the election and the issuing of the bonds were introduced in the Common Council of the City of St. Joseph on March 31, 1919, and on the 21st day of April, 1919, and ordinances were passed by the Common Council and approved by the Mayor on said date.

"On April 28, 1919, the City of St. Joseph, in pursuance of Section 8671, Revised Statutes 1909, presented the ordinances to the Judge of the Circuit Court in St. Joseph and obtained a certificate from him, as required by said section, of the amount of the city's indebtedness existing at said time and that the indebtedness might be as near as he could calculate at the date of the issue of the bonds therein provided, namely, July 15, 1919, and what was the value of all the taxable property in the city ascertained by the assessment next before the last assessment for the state and county purposes, and that in said certificate, it was stated by said judge in pursuance of the provision of said section that he was satisfied that the total amount of the bonds proposed to be issued by said ordinances could be issued without violating the Constitution of the State of Missouri, which said certificates were attached to said ordinances, as provided by said section.

"Thereafter the city caused to be published in the newspaper doing the city printing a copy of the said ordinances, a copy of said certificates of the judge, and a proclamation of the Mayor, as required by Section 8672, Revised Statutes 1909, the first insertion being made on April 29, 1919, and followed by insertions on May 5, 1919, May 12, 1919, May 19, 1919, May 26, 1919. By virtue of Section 8859, Revised Statutes 1909, no ordinance passed by the council shall go into effect before ten days from the time of its final passage; the ordinance having been passed and approved by the Mayor on the 21st day of April, 1919, did not become effective as a law for ten days thereafter, which was the 2nd day of May, 1919. It will therefore be noticed that every preliminary step required by the law to be performed by the city before the holding of the election was taken by the city prior to May 2, 1919, the day upon which the ordinances became effective.

"The certificate obtained from the judge was obtained prior to the ordinances going into effect and the publication of the ordinances; the certificate of the judge and the proclamation of the Mayor, published on April 29, were published prior to the date of the ordinances becoming effective, and the publication date of April 29 should not be counted in the number of insertions required by the statute.

"Section 8672 requires that the publication shall be published once each week for four consecutive weeks, the last insertion to be not more than five days prior to the time for holding the election. The ordinances becoming effective on May 2, which was twenty-five days prior to the election, the election being held on May 27, were not and could not be published for four consecutive weeks, but were published for only twenty-five days."

After a careful examination of the record in this case we are perfectly satisfied that the notice of the special election was void for the reason that it was not

285 Mo.—22

published for four weeks—twenty-eight days—as required by Section 8672, Revised Statutes 1909, after the ordinance went into effect. The ordinance became effective May 2, 1919, and the election was held on May 27, 1919, three days less than the time required by the statute. The record further shows that:

"The valuation of the taxable property in the City of St. Joseph, as ascertained by the assessment next before the last completed assessment for state and county purposes, was the assessment made in the year 1916. The assessment for 1918 was not completed until after October 2, 1919. It was admitted at the trial that the State Board of Equalization did not complete the equalization of the assessment of railroads, bridges, telephones and telegraph properties in the City of St. Joseph for the year 1918 until the 2nd day of October, 1919, and that at the time of the trial on the 15th day of October, 1919, the county clerk was completing and extending the tax books for the taxes assessed for the year 1918 in pursuance of the equalization by the State Board of Equalization for the assessment of the year 1918. So on May 27, the date upon which the election was held, on April 28, the time at which the certificate from the Circuit Judge was obtained, and on April 29, the beginning of the first insertion of the publication as required by the statute, and on July 15, 1919, the date of the bonds as fixed by the ordinance and the date upon which, by virtue of Section 8674, Revised Statutes 1909, the second certificate is required by the statute to be obtained from the judge before the bonds can be sold, the assessment for 1918 was not completed. In the language of the Constitution the last completed assessment was the assessment for the year 1917, and the assessment next before that assessment was the assessment of the year 1916, which is the assessment used by the lower court at the trial. It is admitted in this case by the evidence and conceded by appellants that the total valuation of all taxable property in the City of St. Joseph as ascertained by the assessment

for the year 1916 was $42,473,790, and that on May 27, 1919, the total indebtedness of the city, giving credit to the city on its bonded indebtedness for the sinking fund then existing and also the outstanding judgments, and not including judgments appealed from, together with the amount of the proposed bonds, was the total sum of $2,434,700.21 and that the proposed bonds exceeded the constitutional limitation in the sum of $311,010.71.   The following table shows in detail the foregoing statement.''

The Financial Statement of the City of St. Joseph as of Date of May 27, 1919 was:

```
Assessments, 1916:
     Personal Property ........................$ 4,740,080.00
     Real Estate .............................. 29,687,520.00
     Railways and Bridges .....................  2,070,200.00
     Banks ....................................  1,099,130.00
     Merchants ................................  3,392,970.00
     Manufactures .............................    450,950.00
     Franchises ...............................    732,550.00
     Telegraphs and Telephones ...............     300,390.00

          Total Assessed Valuation .............$42,473,790.00

Indebtedness:
     Bonded Debt .................$722,500.00
     Less Sinking Fund ........... 197,412.07     $525,137.93
     Judgments Outstanding .........$65,712.28
     Less Appeals Taken ...........   6,150.00      59,562.28
     Bonds Recently Voted by the
        People of St. Joseph .....................$1,850,000.00

          Total Indebtedness ................$2,434,700.21
     Total Present and Proposed Indebtedness....$2,434,700.21
     5% of Total Assessed Valuation..............  2,123,699.50

          Excess Over 5% ...................$  311,010.71
```

The total indebtedness of the City as of July 15, 1919, is shown by the following table:

Financial Statement of the City of St. Joseph as of July 15, 1919.

```
Assessment, 1916:
     Personal Property ........................$ 4,740,080.00
     Real Estate .............................. 29,687,520.00
```

Steinbrenner v. St. Joseph.

| | |
|---|---|
| Railways and Bridges ....................$ | 2,070,200.00 |
| Banks .................................... | 1,099,130.00 |
| Merchants ............................. | 3,392,970.00 |
| Manufacturers ......................... | 450,950.00 |
| Franchises ... ......................... | 732,550.00 |
| Telegraphs and Telephones ................. | 300,390.00 |
| Total Assessed Valuation ............ | $42,473,790.00 |

Indebtedness:

Bonded Debt ..................$722,550.00

| | | |
|---|---|---|
| Less Bonds Redeemed .......... | 10,300.00 | |
| | $712,250.00 | |
| Less Sinking Fund ...........$187,112.07 | | $525,137.93 |
| Judgments Outstanding ........$ 80,503.28 | | |
| Less Appeals Taken ............ | 12,650.00 | 67,853.28 |

Bonds Recently Voted by the
People of St. Joseph ....................$ 1,850,000.00

Total Indebtedness ................$2,442,991.21

Total Present and Proposed Indebtedness....$2,442,991.21
5% of Total Assessed Valuation ............, 2,123,689.50

Excess over 5% ....................$ 319,301.71

Counsel for plaintiffs further contend that:

"It is therefore apparent that the lower court was correct in making the injunction perpetual in this case, as the total amount of the bonds that the city was about to sell exceeded the constitutional provision on July 15 in the sum of $319,301.71, and on May 27, 1919, the bonds exceeded the constitutional provision in the sum of $211,010.71.

"If the assessment for 1917 be taken as the controlling assessment, as contended for by appellant, the proposed issue of bonds under the 1917 assessment is beyond the constitutional limit. The total assessed valuation of all properties in the City of St. Joseph as shown by the assessment of 1917 was $48,420,520, made up of the following items: All property subject to taxation, exclusive of merchants' and manufacturers' assessments, was the sum of $43,630,520; merchants' and manufacturers' assessment, $4,790,000; total $48,-420,520. On May 27, 1919, the bonded indebtedness was $722,550, and giving credit to the city for its sink-

ing fund of that date, which was $197,412,07, and deducting the sinking fund from the bonded indebtedness, leaves a balance of $525,137.93, representing the bonded indebtedness of the city. On said date the outstanding judgments were $65,712.28; deducting those judgments which had been appealed at the time, which amount to $6,150, the balance is $59,562.28; adding to these amounts the proposed bond issue of $1,850,000 makes a total indebtedness of the City of St. Joseph on the 27th day of May, 1919, of $2,434,700.21. Five per cent of the assessed valuation is $2,421,026. The difference between the total indebtedness and the five per cent of the assessed valuation makes the proposed bond issue in excess of the constitutional limitation in the sum of $13,674.21

The total indebtedness of the City of St. Joseph on July 15, 1919, was as follows:

"Amount of outstanding bonds, $722,550; deducting amount of bonds redeemed of $10,300 from the above mentioned amount, leaves a balance of $712,250; giving credit to the city of the sinking fund of that date, which was $187,112.07, and deducting from said amount said sinking fund, leaves a balance of outstanding bonds $525,137.93. The outstanding judgments were $80,503.28; $12,650 of said amount was appealed, leaving a balance of outstanding final judgments against the city of $67,853.28; adding to these items the proposed bonded indebtedness of $1,850,000, we have a balance of $2,442,991.21. Five per cent of the total assessed valuation is $2,421,026. The balance shows that the proposed bond issue as of the date of July 15, 1919, was in excess of the constitutional limitation the sum of $21,956.21. So it would seem that whether the assessment of 1916 or the assessment of 1917 be taken as the basis of valuation, the proposed issue of bonds exceeds the constitutional limits."

No disinterested person can read this record without coming to the conclusion that the indebtedness of

the city at the time of the proceedings authorizing the issuance of the bonds here in controversy, were had, added to the amount of the bonds proposed to be issued, would exceed five per cent of the aggregate assessed value of all the property assessed in the city, as shown by the last completed assessment made by the State Board of Equalization, at the time of the authorization of the issuance of the bonds, which, as previously shown, was in the year 1916—the excess of those two indebtednesses at that time was $319,301.71 over the five per cent authorized by the Constitution, as previously shown, and should we take the year 1917 as the last completed assessment as being the proper year, still the existing indebtedness added to amount of the bonds proposed to be issued, would exceed the five per cent of the assessed valuation for that year by $21,965.21.

For the reasons stated we are of the opinion that the circuit court properly enjoined the defendants from issuing and selling the bonds. [State ex rel. Blades v. Wabash Railroad Co., 251 Mo. 134.]

Finding no error in the record, the judgment of the circuit court should be affirmed.